UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GILLIAN B. LOYA, et al.,

    Plaintiffs,

v.

STARWOOD HOTELS & RESORTS et al.,

    Defendants.

No. C06-0815MJP

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION TO DISMISS ON *FORUM NON CONVENIENS* GROUNDS

This matter comes before the Court on Plaintiffs' motion for summary judgment regarding personal jurisdiction, venue, and violations of the Washington Consumer Protection Act (Dkt. No. 68) and Defendants' cross-motion to dismiss on *forum non conveniens* grounds (Dkt. No. 117). Having considered the parties' briefs, and the documents submitted in support thereof, the Court DENIES Plaintiffs' motion and GRANTS Defendants' cross-motion. This action is DISMISSED on *forum non conveniens* grounds.

**Background**

This case arises from the death of Ricardo Loya. Mr. Loya died on May 26, 2005, while scuba diving off the coast of Mexico during a vacation in which the Loyas were registered guests at Club Regina Los Cabos, a timeshare in Los Cabos, Baja California Sur, Mexico. Mr. Loya's wife, Gillian Loya, has sued on behalf of herself, in her capacity as the personal representative of Mr. Loya's estate, and as guardian ad litem for her two daughters, for damages resulting from Mr. Loya's death.

ORDER - 1

The Loyas traveled to Mexico with their friends, David and Deborah Jones. In 1999, the Joneses purchased a timeshare at Whistler from Defendant Whiski Jack. This purchase entitled the Joneses to timeshare rights at Whistler and to exchange rights at resorts around the world including at the Club Regina facility. The Joneses exercised those rights and brought the Loyas with them to Club Regina as their guests.

Plaintiffs have sued the following Defendants in connection with Mr. Loya's death: Raintree Resorts International, Whiski Jack Resorts, Douglas Bech, Walker Harmon, Westin Hotel and Resorts, Starwood Trust, Corporation Mexiture S.A. de C.V. dba Xplora Adventour Los Cabos, PADI Americas, PADI Worldwide, and Resort Condominiums International. Raintree Resorts International ("Raintree") owns the timeshare resort, Club Regina Los Cabos. Whiski Jack Resorts is a Whistler, British Columbia, resort and is a division of Raintree. Raintree Vacation Club is also associated with Raintree. Defendants Douglas Bech and Walker Harmon own ten percent or more shares in Raintree Resorts International. Club Regina Los Cabos is the timeshare portion of a resort, the hotel portion of which is called The Westin Resort & Spa Los Cabos. That hotel is owned by Defendant Starwood Hotels & Resorts Worldwide, also known as "Starwood Trust." Corporation Mexiture S.A. de C.V. dba Xplora Adventour Los Cabos is the company that arranged Mr. Loya's scuba diving trip. According to Plaintiffs' complaint, Xplora was acting in concert or pursuant to a joint venture with Defendants Starwood and Raintree in providing leisure activities, including arranging scuba diving trips, for guests at the Westin Resort. Defendants PADI Worldwide and PADI Americas certify dive centers worldwide. Resort Condominiums International maintains a timeshare exchange business for Raintree members. (Am. Compl. ¶ 21.)

In their amended complaint, filed on March 5, 2007, Plaintiffs allege that Defendants Starwood, Raintree, RCI, and Xplora negligently breached their duty to provide Mr. Loya with a safe diving experience, and that such breach was the proximate cause of his death. Plaintiffs allege that Defendants PADI acted negligently by inadequately investigating and policing the Westin's claims

ORDER - 2

about PADI certification. Plaintiffs also allege claims under the Washington Consumer Protection Act ("WCPA") and the Washington Timeshare Act against Defendants Starwood, Raintree, RCI, and Xplora for falsely advertising in Washington and Mexico that the Westin resort provided safe scuba diving activities. And Plaintiffs allege that Raintree violated the Washington Timeshare Act and the WCPA by failing to consent to personal jurisdiction in Washington.

Plaintiffs filed their original complaint in King County Superior Court on May 16, 2006. The action was removed to this Court and on September 7, 2006, Defendant Raintree moved to dismiss for lack of personal jurisdiction. On November 30, 2006, the Court granted Plaintiffs additional time to conduct jurisdictional discovery. On March 1, 2007, Plaintiffs filed a motion requesting that the Court affirmatively determine that it has personal jurisdiction over Defendant Raintree and that the Western District of Washington is an appropriate venue. Plaintiffs also move on their Washington Timeshare Act claim against Defendant Raintree. On March 15, Raintree, Starwood, Westin Hotel, and Xplora filed a cross-motion requesting that the Court dismiss this action on *forum non conveniens* grounds. On March 19, Defendant Raintree filed a notice informing the Court that it would not be renewing its motion to dismiss based on a lack of personal jurisdiction. On June 12, 2007, the Court requested supplemental briefing on the *forum non conveniens* issue. (Dkt. No. 160.) Specifically, the Court requested that all defendants announce whether they are willing to submit to jurisdiction in Mexico for purposes of this lawsuit. Having received responses from all defendants in this action, these matters are now ripe for the Court's consideration.

**Discussion**

**I.     Personal Jurisdiction**

Plaintiffs argue that this Court has personal jurisdiction over Defendant Raintree. As mentioned, Raintree notified the Court that it is no longer contesting personal jurisdiction in this matter. (Dkt. No. 124.) Because Raintree consents to personal jurisdiction, the Court has personal jurisdiction over Raintree and need not consider Plaintiffs' arguments on this matter.

ORDER - 3

1 **II.    Washington Consumer Protection Act**

2     Plaintiffs allege that Defendant Raintree violated the Washington Timeshare Act, RCW 64.36
3 et seq., and the Washington Consumer Protection Act, RCW 19.86 et seq., by failing to consent to
4 service and by asserting defenses based on personal jurisdiction.

5     **A.    Timing under Rule 56(a)**

6     As an initial matter, Defendants argue that Plaintiffs' motion regarding the Timeshare Act is
7 premature under Fed. R. Civ. P. 56(a).  Federal Rule 56(a) states that a claimant "may, at any time
8 <u>after the expiration of 20 days from the commencement of the action</u> or after service of a motion for
9 summary judgment by the adverse party, move ... for a summary judgment ...." (Emphasis added.)
10 Plaintiffs alleged their Timeshare Act claims for the first time in their amended complaint, filed on
11 February 28, 2007.  (Dkt. No. 67.)  The next day, Plaintiffs filed this motion for summary judgment.
12 (Dkt. No. 68.)

13     Whether Rule 56(a) requires a twenty-day waiting period for filing summary judgment motions
14 after the filing of an <u>amended</u> complaint need not be resolved here.  Even if Plaintiffs technically
15 violated the Rule 56(a) timing provision, it would be inefficient to strike the motion as unripe where
16 the parties have fully briefed the merits of the underlying claim.  The Court will consider the merits of
17 Plaintiffs' Timeshare Act claims.

18     **B.    Violation of Washington Consumer Protection Act / Timeshare Act**

19     Plaintiffs argue that Raintree's actions — failing to consent to service and moving to dismiss
20 for lack of personal jurisdiction and venue — violated the Washington Timeshare Act, RCW
21 64.36.035.  Plaintiffs argue that the Washington Consumer Protection Act ("WCPA"), RCW 19.86,
22 provides a cause of action for the Timeshare Act claim.

23     **1.    Cause of Action**

24     Plaintiffs argue that they have a cause of action under the WCPA for unfair and deceptive trade
25 practices.  The applicable WCPA provision states: "Unfair methods of competition and unfair or

ORDER - 4

deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020. To bring a private cause of action for a WCPA violation, a plaintiff must establish five elements: (1) an unfair deceptive act or practice; (2) in trade or commerce; (3) which affects the public interest; (4) injury to plaintiff in his or her business or property; and (5) a causal link between the unfair or deceptive act complained of and the injury suffered. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 784-85 (1986).

Plaintiffs have failed to make the requisite showing to establish a cause of action under the WCPA. Plaintiffs point to RCW 64.36.170, which states that "[a]ny failure to comply with [the Timeshare Act] constitutes an unfair and deceptive trade practice under chapter 19.86." But even assuming that Plaintiffs could show that Defendants failed to comply with the Timeshare Act by contesting jurisdiction and failing to consent to service of process in Washington, Plaintiffs have not alleged that they were harmed in business or property. And they have not even attempted to establish a causal link between the alleged Timeshare Act violations and any injury suffered.[1] Thus, Plaintiffs have failed to even assert the requisite elements of a WCPA claim. See Hangman Ridge, 105 Wn.2d at 784 (holding that all five elements must be met for plaintiff to prevail in private CPA action).

**2.    Defendants have not violated the Washington Timeshare Act**

Even if Plaintiffs had a cause of action under the WCPA or the Timeshare Act itself,[2] Plaintiffs have not established that Defendant Raintree violated the Timeshare Act. Plaintiffs argue that Raintree's failure to consent to service and filing of a motion to dismiss for lack of personal

---

[1] In their complaint, Plaintiffs state that Defendants' challenge to personal jurisdiction "caused plaintiffs and their attorneys substantial time, costs, and expense." (Am. Compl. ¶ 50.) But Plaintiffs have not asserted in their motion that these legal costs constitute the basis of their WCPA / Timeshare Act claim.

[2] Plaintiffs have not even attempted to establish a direct or indirect cause of action under the Timeshare Act itself.

ORDER - 5

jurisdiction and venue based on corporate shield defenses violated RCW 64.36.035. That provision in the Timeshare Act states as follows:

> **§ 64.36.035. Applications for registration, consents to service, affidavits, and permits to market -- Authorized signatures required -- Corporate shield disclaimer prohibited**
>
> (1) Applications, consents to service of process, affidavits, and permits to market shall be signed by the promoter, unless a trustee or person with power of attorney is specifically authorized to make such signatures. If the signature of a person with a power of attorney or trustee is used, the filing of the signature shall include a copy of the authorizations for the signature. No promoter or other person responsible under this chapter shall disclaim responsibility because the signature of a trustee or attorney in fact, or other substitute was used.
>
> (2) If the promoter is a corporation or a general partnership, each natural person therein, with a ten percent or greater interest or share in the promoter, shall, in addition to the promoter, be required to sign as required in this section, but may authorize a trustee or a person with power of attorney to make the signatures.
>
> (3) All persons required to use or authorizing the use of their signatures in this section, individually or otherwise, shall be responsible for affidavits, applications, and permits signed, and for compliance with the provisions of this chapter. Individuals whose signatures are required under this section shall not disclaim their responsibilities because of any corporate shield.

RCW 64.36.035. Plaintiffs maintain that this provision requires timeshare promoters to consent to personal jurisdiction and service of process in Washington. The Court does not agree with Plaintiffs' reading of the statutory text. The above provision mandates <u>which</u> person(s) or entity in the timeshare business must sign documents such as consents to service of process. It does not <u>require</u> consent to service of process. And even if it did, the statute is silent on the issue of personal jurisdiction. Under Fed. R. Civ. P. 4(a), a defendant who waives service of process "does not thereby waive any objection to the venue or to the jurisdiction of the court over the person of the defendant." Raintree therefore did not violate RCW 64.36.035 when it contested personal jurisdiction.

Plaintiffs' argument that Defendants violated RCW 64.36.120(3) is equally strained. That section provides that "[a]ny provision in a timeshare contract or agreement which designates jurisdiction or venue in a forum outside this state is void with respect to any cause of action which is

ORDER - 6

1  enforceable in this state." RCW 64.36.120(3).  Plaintiffs argue that this provision requires timeshare

2  promoters doing business in Washington to allow Washington residents to litigate their claims in

3  Washington.

4        Plaintiffs' argument confuses the statutory provision with a contractual forum selection clause.

5  Had Raintree presented a timeshare contract that mandated a non-Washington forum, Plaintiffs would

6  have a valid argument that the agreement was void under RCW 64.35.120(3).  But Defendants have

7  not asserted that any agreement controls the choice of forum here.  Defendants' argument that this

8  case would be more conveniently litigated in another forum does not conflict with the statute.

9        In conclusion, Plaintiffs have failed to establish a violation of the Timeshare Act.  Plaintiffs do

10  not have a cause of action under the WCPA and they have not asserted a cause of action under the

11  Timeshare Act itself.  Even if they did have such a cause of action, Plaintiffs' claim is premised on an

12  unsupportable interpretation of the Timeshare Act.  The Court denies summary judgment on this issue.

13  **III.**  ***Forum Non Conveniens***

14        Defendants seek to dismiss this case on grounds of *forum non conveniens*.  Plaintiffs argue that

15  this Court provides the most appropriate forum for this litigation.

16        "The *forum non conveniens* determination is committed to the sound discretion of the trial

17  court." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981).  "A party moving to dismiss based on

18  *forum non conveniens* bears the burden of showing (1) that there is an adequate alternative forum, and

19  (2) that the balance of private and public interest factors favors dismissal." Dole Food Co. v. Watts,

20  303 F.3d 1104, 1118 (9th Cir. 2002) (citing Lueck v. Sundstrand Corp., 236 F.3d 1137, 1142-43 (9th

21  Cir. 2001)).  "The plaintiff's choice of forum will not be disturbed unless the private interest and public

22  interest factors strongly favor trial in the foreign country." Id.

23

24

25

ORDER - 7

**A.     Preliminary Matters**

        **1.     Impact of Death on the High Seas Act**

Plaintiffs argue that a *forum non conveniens* defense is inapplicable here because a federal statute — the Death on the High Seas Act ("DOHSA") — applies and mandates venue in U.S. district court. DOHSA provides a cause of action in U.S. District Courts for the surviving relatives of decedents who died on the high seas:

> When the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shore of the United States, the personal representative of the decedent may bring a civil action in admiralty against the person or vessel responsible. The action shall be for the exclusive benefit of the decedent's spouse, parent, child, or dependent relative.

46 U.S.C. § 30302. Contrary to Plaintiffs' assertion, DOHSA does not mandate venue in the United States. Unlike actions arising under statutes like the Jones Act, DOHSA actions do not arise under the "laws" of the United States but are specifically within the admiralty jurisdiction of the federal courts. See Pain v. United Tech. Corp., 637 F.2d 775, 780-81 (D.C. Cir. 1980) (noting that district court does not have mandatory jurisdiction over DOHSA claim — and therefore may dismiss on *forum non conveniens* grounds — because a DOHSA claim does not invoke federal question jurisdiction); Fen v. Sanko Kisen Corp., 441 F. Supp. 45, 48 (S.D.N.Y. 1977) ("[A]n admiralty case, being not a 'federal question' case within the meaning of 28 U.S.C. 1331, is consequently subject to the rule recognizing an unqualified discretion to decline jurisdiction in suits in admiralty between foreigners." (internal quotation marks and citations omitted)). Thus, whether or not DOHSA applies to this action, it does not preclude *forum non conveniens* dismissal.

        **2.     Impact of RCW 64.36.120**

Plaintiffs point to RCW 64.36.120(3) and argue that Defendants may not rely on a *forum non conveniens* defense because the parties have "agreed" upon an appropriate venue. But, as explained above, the parties have not agreed on a venue. An applicable statutory provision does not constitute an agreement between the parties. And RCW 64.36.120(3), which would void an applicable forum

ORDER - 8

selection clause, is not itself a forum selection clause that trumps a *forum non conveniens* defense. RCW 64.36.120 does not apply to this analysis.

### B.     Adequacy of Alternative Forum

"An alternative forum ordinarily exists when defendants are amenable to service of process in the foreign forum." Watts, 303 F.3d at 1118.  "A foreign forum is adequate when it provides the plaintiff with a sufficient remedy for his wrong." Id.

Baja California Sur, Mexico provides an adequate alternative forum.  First, all defendants have agreed to accept service of process and submit to jurisdiction in a Mexican court and waive any statute of limitations defenses for a 120-day period immediately following dismissal here. (See Dkt. Nos. 117, 161-64.)  Baja California Sur, Mexico, is therefore an available alternative forum. See Watts, 303 F.3d at 1118.  Second, Mexico is an adequate forum.  Defendants present a declaration from a Mexican attorney who states that the Loyas could bring a contract and/or tort based suit in Mexico. (Dkt. No. 119, Gonzalez de Castilla Decl. at 3.)  As he explains, the remedy for a wrongful death tort suit in Baja Sur, Mexico, is the highest daily minimum wage in the region, (b) multiplied by four, (c) extended by the number of days provided for by the labor law (790 days). (Id. at 4.)  He also states that the Loyas could pursue a claim for "moral damages," which are similar to loss of consortium damages, but concedes that such damages are infrequently awarded. (Id. at 5.)

Plaintiffs argue that Mexico is not an adequate forum because they have sued mostly American corporations and citizens and because any remedy obtained in Mexico would be limited.  Plaintiffs present the declaration of Rosendo Lopez-Mata, a senior partner at a bilingual Mexican law firm with a special emphasis in advising foreign litigants about the Mexican legal system. (See Dkt. No. 142, Lopez-Mata Decl.)  Mr. Lopez-Mata states that any wrongful death recovery will be capped at about $12,000-13,000, that it is very unlikely Plaintiffs would recover any moral damages, and that even if they did, those damages would amount to about $4,000. (Id. at 2-3.)  Mr. Lopez-Mata also explains that Mexican attorneys do not work on a contingency basis, that his firm would charge about $50,000

ORDER - 9

to litigate this case, and that prevailing parties are generally not awarded attorneys fees. Thus, Mr. Lopez-Mata opines that the actual costs of bringing this wrongful death claim in Mexico would exceed the available recovery for Mrs. Loya and her children. (Id. at 4.)

Even considering Mr. Lopez-Mata's declaration, the Court concludes that Mexico is an adequate alternative forum. All of the defendants have consented to jurisdiction in Mexico. And Plaintiffs and Defendants agree that Mexican courts would provide Plaintiffs with some remedy for the wrongs asserted. The fact that Plaintiffs' potential recovery is greater in Washington than in Baja California Sur, Mexico, does not make the Mexican forum inadequate. As the Supreme Court explained in Piper Aircraft, the fact that the alternative forum's substantive law is decidedly less favorable to the plaintiff should not be given substantial weight in *forum non conveniens* determinations. 454 U.S. at 247. Where the alternative forum offers a remedy for the plaintiff's claims, and there is no danger that she will be treated unfairly, the foreign forum is adequate. Id. at 255. Because a Mexican court would have jurisdiction over all defendants, and because Plaintiffs may pursue wrongful death and contract claims in that forum, Plaintiffs have an adequate alternative forum in Baja California Sur, Mexico.

**C.  Private Interest Factors**

The Court must consider the following private interest factors in deciding whether to dismiss on *forum non conveniens* grounds: "the relative ease of access to sources of proof, the availability of compulsory process for unwilling witnesses, the comparative cost of obtaining willing witnesses, the possibility of a view of any affected premises, the ability to enforce any judgment eventually obtained, and 'all other practical problems that make trial of a case easy, expeditious, and inexpensive.'" Monegro v. Rosa, 211 F.3d 509, 512 (9th Cir. 2002) (quoting Gulf Oil Co. v. Gilbert, 330 U.S. 501, 508 (1947)).

ORDER - 10

### 1.     Relative ease of access to sources of proof

Defendants argue that proof would be more easily accessed in Mexico. As they explain, besides Ms. Loya, their friends the Jones, and Ms. Daune Fink (Mr. Loya's diving partner), all presently identified or potential liability witnesses are located in Mexico. (Somers Decl. ¶ 5.)[3] Defendants identify the following Mexican witnesses: employees and management of the timeshare resort, employees of the company that arranged the scuba diving trip, the person who drove Mr. Loya to the scuba dive trip, the boat captain, the owner and employees of the dive shop, the diving instructors, including the dive instructor who assisted in the search for Mr. Loya, the doctor who pronounced Mr. Loya dead, and Mexican federal, state, and local officials who investigated Mr. Loya's death. (Id.) They also note that documentary evidence relating to the corporate structure of Starwood Defendants is outside Washington and that evidence relating to the Mexican entities is presumably located in Mexico. Finally, Mr. Loya may have signed a contractual liability release, which is located in Mexico and which will require application of Mexican law to determine interpretation and validity.[4]

Plaintiffs' argue that proof will more easily be accessed in Washington. Plaintiffs contend that American defendants Raintree, Starwood, and RCI misrepresented to them in Washington and in Mexico that scuba diving trips would be safe and overseen by certified divers and that evidence of these misrepresentations is available in Washington. (See Stafne Decl., Exs. 1-3.) They point out that

---

[3]     Plaintiffs moved to strike the Somers' declaration on hearsay grounds and because, Plaintiffs allege, Somers' declaration is not based on personal knowledge. To the extent that Mr. Somers declaration identifies witnesses that he believes are likely to have relevant information concerning the incidents leading to Mr. Loya's death, it is not hearsay and is based on Mr. Somers' own knowledge. Mr. Somers states that, as "Project Manager" at Club Regina Los Cabos, he directed the investigation of Mr. Loya's death. The motion to strike is DENIED.

[4]     It is not clear whether Mr. Loya actually signed the release. (See Somers Decl., Ex. A.) The Court agrees with Plaintiffs that this document is not readable. The Court only relies on the document to the extent it suggests that Mr. Loya may have signed a liability release, not as proof that he signed this particular release.

ORDER - 11

evidence of Defendants' negligence in advertising will come from Defendants' corporate offices in the United States. They assert that they have copies of Mexican police reports that establish that boy who acted as diving guide was not old enough to be PADI certified. They also assert that expert testimony can be obtained here. (Oakley Decl.) Plaintiffs also point out that in addition to the Loyas, Defendants Starwood, Raintree, RCI, Bech, Harmon, PADI Americas, and PADI Worldwide are all American entities or citizens. Plaintiffs have not sued the Mexican subsidiaries of Starwood and Raintree, but instead have only sued the American parent corporations.

Although Plaintiffs have sued some American defendants, this factor as a whole weighs in favor of Defendants. The gravamen of Plaintiffs' complaint is a wrongful death action.[5] Mr. Loya's death, and the activities leading up to his accident, occurred in Mexico. A trial of that action will require evidence from people who were present before, during, and after Mr. Loya's accident, and documentation of the accident and the investigation. Those sources of proof are predominantly located in Mexico.

**2.    Compulsory Process / Cost of Obtaining Witnesses**

Because some of Plaintiffs' witnesses, including Mrs. Loya, Mr. Loya's diving partner, Daune Fink, and Plaintiffs' experts, live in the United States, Plaintiffs argue that a trial in Mexico will be a costly endeavor. On the other hand, Defendants have identified many witnesses whose testimony will be pertinent to the wrongful death inquiry, all of whom reside in Mexico. It appears that the majority of liability witnesses reside in Mexico. Most of those witnesses, because they are outside the control of Defendants, cannot be compelled to testify in Washington. Although this Court may issue letters rogatory to request assistance from a foreign court in obtaining discovery, Defendants will still have to bear the cost of bringing witnesses to Washington. Although this factor does not strongly favor either

---

[5] The Court recognizes that Plaintiffs have also sued some Defendants for false advertising, and that proof as to those claims will be more easily accessible in the United States. But all of Plaintiffs' claims revolve around their main claim that Defendants' negligence caused Mr. Loya's death. And it is that wrongful death claim that should be the focus of the Court's analysis.

ORDER - 12

party, because the majority of witnesses whose testimony will be pertinent to the wrongful death inquiry reside in Mexico, this factor favors Defendants.

### 3. Other practical problems

Defendants argue that issues of standard of care for rescue procedures and medical care will require experts familiar with the standard of care in Mexico. They also argue that trying the case here will cause a time delay. They assert that trying the case in Mexico will be comparatively inexpensive and more efficient. Plaintiffs contradict that argument with Mr. Lopez-Mata's declaration in which he states that the litigation will take more time in Mexico and will not be economically viable. He also offers a report by the National Law Center for Inter-American Trade regarding tort law in Mexico that states that "the ability of an injured plaintiff to compel a wrongdoer to turn over documents and other potential evidence (discovery) is much more limited in Mexico. Essentially, the plaintiff must specify with exactitude the documents or evidence he or she wishes the wrongdoer to turn over . . . ." (Lopez-Mata Decl. & Ex. 3.) Given the competing problems, this factor does not favor either side.

### 4. Judgment enforceable

A Mexican judgment against the American defendants would be enforceable in the United States. Defendants' expert explains how a Mexican judgment will attach to Defendants' in Mexico. (Gonzales de Castilla Decl. at 7.) The recognition of foreign judgments in the United States is governed by state law. See Tonga Air Servs. v. Fowler, 118 Wn.2d 718, 726 (1992). Like many states, Washington has adopted the Uniform Foreign Money-Judgments Recognition Act, RCW 6.40 et seq., which provides for enforcement of foreign judgments. See RCW 6.40.030. Because any judgment against Defendants will be enforceable in Mexico and/or the United States, this factor favors Defendants.

### 5. Relative advantages and obstacles to fair trial

Defendants argue that a trial in Mexico would remove the obstacles mentioned above, and that therefore this factor weighs heavily in favor of Mexico. Plaintiffs argue that they would not obtain any

ORDER - 13

remedy if this case is moved to Mexico because it would be economically prohibitive. This factor does not favor either party.

### D. Public Interest Factors

The Court needs to consider the following public interest factors: "court congestion, the unfairness of burdening citizens in an unrelated forum with jury duty, the interest in having localized controversies decided at home, the interest in trying the case in a forum familiar with the applicable law, and the interest in avoiding unnecessary conflicts of laws." Monegro, 211 F.3d at 512 (citing Gilbert, 330 U.S. at 508-09).

#### 1. Administrative Difficulties / Congestion

Comparing the relative dockets of this Court and that in Mexico weighs in favor of the parties litigating here. This Court has a relatively low case load and is particularly effective in moving parties toward trial within a short period of time. In contrast, Plaintiffs' expert states that courts in Baja California Sur, Mexico, are among the most congested in Mexico. (Lopez-Mata Decl. at 4.) Mr. Lopez-Mata estimates that this action would take about 581 days to litigate in Mexico. (Id.) Defendants have not presented any evidence to dispute the docket congestion in Mexico. This factor weighs in favor of Plaintiffs.

#### 2. Local Interest in Having Localized Controversies Decided at Home

Mexico and Baja California Sur have substantial interests in this case. Mr. Loya's scuba diving accident took place in Baja California Sur, Mexico. Mexico has an interest in holding businesses operating in Mexico accountable and insuring that foreign tourists are treated fairly. Washington has some interest in this case. Plaintiffs are residents of Washington. Plaintiffs allege that some of the defendants targeted Plaintiffs and their friends, through advertising in Washington. Washington has interest in preventing such misrepresentations and tortious conduct.

ORDER - 14

On balance, this factor weighs in favor of Defendants. As mentioned, the gravamen of Plaintiffs' complaint is that Defendants, operating in Mexico, caused Mr. Loya's death. Mexico has the stronger interest in this case.

**3.     Interest in having trial in forum that is at home with the law that must govern the action**

The parties disagree about which law would apply in this case. In determining choice of law, Washington courts first decide whether the relative laws conflict. If they do, Washington courts use the "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws (Restatement of Conflicts) § 145 (1971). Williams v. State, 76 Wn. App. 237, 241 (1994). Under this test, choice of law depends upon which of two or more jurisdictions has the "most significant relationship" to a specific issue. Id. Therefore, each State's interests must be analyzed in relation to each issue presented. Id.

Defendants argue that at least one conflict exists between the laws of Mexico and Washington that will require a choice of law analysis: Mexico caps the damages recoverable in a wrongful death action, whereas under Washington law, non-economic damages for wrongful death are unlimited. (Compare Gonzales de Castilla Decl. with RCW 4.20.020.) Defendants assert that Mexican law will apply because the Mexican resort was owned and operated by Mexican companies (subsidiaries of American companies) and Mr. Loya's death occurred in Mexico. Plaintiffs do not contradict Defendants' choice of law analysis. Plaintiffs only assert that this Court is familiar with DOHSA, the Washington Timeshare Act, and the Washington Consumer Protection Act.

The Court need not engage in a full choice of law analysis at this stage. See Piper Aircraft, 454 U.S. at 251 ("The doctrine of *forum non conveniens* ... is designed in part to help courts avoid conducting complex exercises in comparative law."). It appears that Mexican law may apply to some issues, particularly the applicable standard of care and interpretation of any liability release signed.

ORDER - 15

This Court is not familiar with Mexican law. The need to apply foreign law strong favors dismissal based on *forum non conveniens*. Piper, 454 U.S. at 260.

### 4. Avoidance of Unnecessary Problems in Conflict of Laws, or in the Application of Foreign Law

The fact that this Court will be asked to untangle conflicts of laws and apply the law of Mexico, which is foreign, weighs in favor of dismissal. See Piper Aircraft, 454 U.S. at 251.

### 5. Burden of jury duty on community which has no relation to the litigation

Defendants assert that all alleged wrongful conduct occurred in Mexico and that litigating this case here would place an unfair burden on Washington jurors who have no relationship to this litigation. But Plaintiffs argue that Defendants deceived Washington consumers in both Washington and in Mexico. Plaintiffs argue that Washington jurors have an interest in adjudicating claims made by Washington citizens against corporations doing business in Washington.

Even considering Plaintiffs' Consumer Protection Act claims, this factor weighs in favor of Defendants. The majority of the alleged wrongful conduct took place in Mexico and among non-Washington defendants. Washington jurors should not be burdened with this litigation.

### E. Dismissal on *Forum Non Conveniens* Grounds

After considering all these factors, the Court concludes that *forum non conveniens* dismissal is appropriate for two important reasons: (1) Baja California Sur, Mexico, is an adequate alternative forum, and (2) the nucleus of Plaintiffs' case is the place where Mr. Loya's accident occurred — Baja California Sur, Mexico. Although Plaintiffs are citizens of this country, "a United States citizen has no absolute right to sue in a United States court." See Mizokami Bros. of Arizona, Inc. v. Baychem Corp., 556 F.2d 975, 977 (9th Cir. 1977). The Supreme Court has explained that the central focus of the *forum non conveniens* inquiry is convenience. Reyno, 454 U.S. at 249. Here, as a whole, the public and private interest factors weigh in favor of Defendants, leading to the conclusion that Mexico is a more convenient, and therefore appropriate, forum. Because Baja California Sur, Mexico is a

ORDER - 16

more convenient forum for Plaintiffs' litigation, the Court DISMISSES this case on grounds of *forum non conveniens.*

## Conclusion

The Court DENIES Plaintiffs' motion for summary judgment and GRANTS Defendants' cross-motion for summary judgment. Because Defendant Raintree is no longer challenging personal jurisdiction, the Court denies as moot Plaintiffs' motion for summary judgment on the issue of personal jurisdiction. The Court also denies Plaintiffs' motion as it relates to Defendants' alleged violations of the Washington Timeshare Act because Plaintiffs do not have a cause of action under the Timeshare Act or the Washington Consumer Protection Act. Even if they did, Plaintiffs' argument is premised on an incorrect interpretation of the Timeshare Act. Finally, the Court grants Defendants' motion for *forum non conveniens* dismissal. Because Baja California Sur, Mexico, is an adequate and more convenient forum for this litigation, this action is DISMISSED.

The Clerk is directed to send copies of this order to all counsel of record.

Dated: July 6th, 2007.

Marsha J. Pechman
United States District Judge

ORDER - 17